Our final case for the day is Abarca-Martinez v. Sessions. Good morning, Your Honors. May it please the Court. My name is Dovrin Oderchik, and I am the attorney for Petitioner Ignacio Abarca-Martinez. The Board of Immigration Appeals dismissed his appeal regarding the denial of his motion to reopen based on ineffective assistance of counsel. The sole issue on appeal is whether the Board erred in finding that Mr. Abarca-Martinez's motion to reopen, which was filed beyond the 90-day deadline, did not warrant equitable tolling. This Court in Cervellas v. Gonzalez observed that the test for equitable tolling is not the length of the delay in filing the motion, but whether the respondent exercised due diligence and could have been reasonably filed early. I'll tell you what my problem is. The timeline is 90 days. And the concern here is not simply that the actual time taken was five years, but that your client concedes taking much more than 90 days even after he had a new lawyer and he and his new lawyer went through the transcript of the former hearing. That event occurred on October 21, 2016, and the motion to reopen was filed more than four months later. Why isn't that all by itself sufficient to show lack of diligence? Well, Your Honor, in responding to that, I think that the second Lozada requirement, as far as sending— I'm not asking about Lozada requirements. Correct. I'm asking about the fact that four months was taken even after the alien had stopped relying on his former lawyer, and the deadline is 90 days. Well, four months is bigger than three months. It seems straightforward. Well, again, the letter was sent to the former attorney on November 17 of 2016. After that letter was sent, I was sent a series of emails from her. A couple weeks after that, she said, I'm sorry, I haven't got it. I'm going to send it in a day. Nothing transpired. A couple weeks later, I had emailed her again. I said, where is it? She said she's going to have it in one day. Finally, at the end of December 2016, I said, look, I've had enough. I have to go proceed with the bar complaint. The reason that I waited and the reason I think that really where I would sort of see where his claim, I think, I guess, cemented was the lack of a response from her. Had she responded, for instance, with a letter showing that she had advised him back in April 2012 that, look, I made a serious error, you should seek different counsel, I think that would have been highly irrelevant to the issue of equitable tolling. I personally would have had concerns about moving forward with a motion to reopen at this point had she produced that evidence. I waited for her to produce the evidence. Unfortunately, waiting is just fatal when you've got a 90-day clock ticking. My question for you is very similar to the question I asked two cases ago. The district judge says this case is resolved. Why don't you file a protective notice of appeal? Why don't you file a petition? And you can always supplement it later. But here, nothing happened. Well, again, relying on several Seventh Circuit cases where a bar complaint was filed and then within a matter of two or three days a motion to reopen was filed, this court had recognized that that doesn't really give the offending former counsel really a meaningful opportunity to respond. And I relied on those cases to give her sufficient time. Now, again, as I saw it, I think that I really wanted to get a response from her. I wanted to see exactly what transpired because there are parts of this case that unfortunately only she could have answered, and I wanted those answers. She stated to me that she was going to be responding to me on two separate occasions in December of 2016. I took her for her word. I felt that it was acceptable under the circumstances to give her that time if she said that she was going to send it to me, which she did. She never did. I know that there is another decision, Your Honor, involving someone that was within the 90-day period and had waited too long, but I think that that's sort of a different factual situation. At this point, what I really wanted at this point was some explanation from former counsel as to what happened, and I think that would have been highly irrelevant to the question. She never responded, and in essence I think that her silence to that is actually powerful evidence that he has a viable claim. Not only an underlying claim, but the fact that his case warrants equitable tolling. One of the allegations that I put in the letter was involving a third party who I've called a notario, a non-lawyer by the name of Licia Navarrete. This case does not involve what's considered a normal, typical attorney-client relationship. The former counsel essentially delegated all communications to this third party, this notario, and that delegation of that communication was pre-removal and it was post-removal. And I think that that is the fact that I think was really misapprehended by the Board of Immigration Appeals. I do want to further note that there was several pieces of evidence that were entirely disregarded, and just a complete misapprehension of what was actually stated on the record. What the parties, I guess, do agree on is that the former attorney did concede on a record that she had erred by not getting Mr. Barca-Martinez fingerprinted and filing his relief on the day of the individual hearing. Where we depart is both the IJA and the Board's decision stating, well, you know, he was given his appeal rights presumably based on ineffective citizen counsel. That's just not correct. What actually was stated on the record was Judge Cuevas blaming entirely my client and putting sole responsibility on him with respect to the fingerprint requirement. So this is April 18, 2012. He's leaving that courtroom essentially being chewed out by the immigration judge. Immediately after that, there's a meeting and there's a third party there, Pedro Ocampo, his cousin. There was an affidavit in the record which the Board of Immigration Appeals does not at all discuss, does not at all even recognize. Mr. Ocampo states in his affidavit, as he was translating, that Ms. Schmeiser essentially claimed the immigration judge had said that, claimed that he was discriminatory towards Mexicans, that she was going to get Mr. Barsa fingerprinted and get the case reopened. Within the 90-day period, Your Honor, there was notes indicating that in June of 2012, my client communicated about the fingerprint issue. So there's evidence that, in fact, there was representation going on. She was doing some sort of remedial plan that didn't make any sense. And during this 90-day period, when he should have basically been apprised of the possibility of pursuing a Lozada motion, she decided to do something that I quite honestly don't understand what she was trying to do. Thereafter, all the communications were between him and this notario until September of 2016 when she said that she wasn't working with this attorney anymore. My time is up. If there's any questions. All right. Seeing none, thank you. Mr. Wisecutt. Thank you. May it please the court, I am Jason Wisecutt for Respondent Attorney General. In this case, the court should deny the petition for review. Specifically, the agency did not abuse its discretion in finding that Petitioner failed to exercise the requisite due diligence in pursuing his ineffective assistance of counsel claim. The most important point here is that Petitioner waited nearly five years from the issuance of the removal order to file his motion to reopen. Moreover, Petitioner's counsel admitted during the hearing it was her mistakes that led to the failure to file the cancellation of removal application and to get the finger prints. The immigration judge also advised Petitioner of his ability to appeal. And again, I would just like to point this court to the Zambrano decision, which says it sets up reasonableness as a standard. So the question becomes whether it was reasonable for the petitioner to wait those five years before filing the motion to reopen. Here, the government argues that it was not an abuse of discretion for the agency to find as such. Respondent doesn't have anything further unless the panel has questions here. No, it's a good way to look at it. Thank you, Your Honor. Well, thank you very much. The case is taken under advisement and the court will be in recess. Thank you.